# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW STANSBURY, | ) 1:04cv6123 DLB |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| JO ANNE B. BARNHART, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

**BACKGROUND**

Plaintiff Andrew Stansbury ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On March 9, 2005, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for disability insurance benefits on May 17, 2000, alleging disability since July 5, 1999, due to cumulative trauma in both knees. AR 99-101, 108. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 78-81, 84-87, 88. On February 19, 2002, ALJ James Berry held a hearing. AR 37-63. On March 11, 2002, ALJ Berry found that Plaintiff was not disabled. AR 219-229. On October 30, 2002, the Appeals Council vacated the decision and remanded it back to the ALJ. AR 236-238.

On July 9, 2003, ALJ Berry held a second hearing. AR 63-75. On August 25, 2003, the ALJ issued his decision and again found Plaintiff not disabled. AR 15-29. On July 1, 2004, the Appeals Council denied review. AR 6-10.

<u>Hearing Testimony</u>

*First Hearing*

ALJ Berry held the first hearing on February 19, 2002, in Fresno, California. Plaintiff appeared with his attorney, Linda Vasquez-Flores. Vocational expert Judith Najarian also appeared and testified.[3] AR 37.

Plaintiff testified that he was 50 years old at the time of the hearing. He was 6'2" tall and weighed 345 pounds. He completed high school and had two semesters of college. AR 41. He has a driver's license and drives everyday. AR 42. After 30 minutes in the car, both knees get stiff and he has difficulty getting in or out of the car. AR 42.

He last worked in July 1999 as a tool and dye maker. AR 43. He had to stop working because of pain in his knees, primarily his right knee. AR 44. In September 1999, he underwent arthroscopic surgery during which the doctor cleaned out his knee and told him repairs could not be done because it was too worn out. AR 45. He had prior surgery on his right knee in 1993 to

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Ms. Najarian's testimony is not included in this summary because the ALJ relied on the vocational expert testimony received at the second hearing.

2

repair a torn meniscus. AR 45. He also had a prior surgery on his left knee. AR 46. Doctors have told him that he needs a total knee replacement in both knees. AR 46.

He explained that the pain is constant in his right knee and intermittent in the left. AR 46. The pain is a dull ache most of the time, but sometimes during the day it is sharp and intense, like an ice pick stuck to his joint. AR 46. Any prolonged sitting, standing or walking aggravates the pain. AR 47. He can sit for about three minutes before needing to get up and stand for about 15 minutes. AR 47. If he's on flat terrain, he can walk for about an hour. AR 47. His back also gets stiff if he does too much walking. AR 47. If he bends, he can't get up. AR 48. After sitting for about 30 minutes, it gets difficult to get up. AR 48. His knees buckle and go out two to three times per day. AR 49. He thought he could lift about 20-30 pounds and could stand for about 15-20 minutes. AR 49. He can climb stairs if he is careful. AR 50. He can kneel, but has difficulty getting back up. AR 51. He uses a cane on occasion. AR 51.

His doctor prescribed over the counter Ibuprofen and he takes three or four a day. AR 52. He hasn't seen his treating doctor, Dr. Oberto, for almost a year and a half because he has no medical insurance. AR 52. When he last saw Dr. Alberto, he received a series of injections in his right knee which helped "some" for about four months. AR 52-53.

At the time of the hearing, he was attending community college during the week and was in his second semester. AR 53. He can't sit at a desk and uses a table in the back of the classroom so that he can get up and down when he needs to. AR 53.

During a normal day, he gets up and makes and eats breakfast. AR 54. He uses a wooden stool that's just the right height so that he doesn't have to sit all the way down, but doesn't stand, either. AR 54. He tries to help his wife with chores, but vacuuming takes all day. AR 55. He doesn't do any yard work. AR 55.

When questioned by his attorney, Plaintiff explained that he hoped to major in American Family Therapy because he thought it was something that he could do where he could control how much he sits and stands. AR 56. When asked if his Ibuprofen causes any side effects, Plaintiff explained that it makes his stomach irritated. AR 56.

*Second Hearing*

After the Appeals Council remanded for additional VE testimony, ALJ Berry held a supplemental hearing on July 9, 2003, in Fresno, California. Plaintiff appeared with his attorney, Jeffrey Milam, but did not offer testimony. AR 63. VE Qusento Piro also appeared and testified. AR 63.

The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education and past work experience, with a combination of severe impairments. AR 67. This person could lift and carry 20 pounds occasionally and 10 pounds frequently, and retains the ability to stand and/or walk four hours and sit for six hours. AR 67. This person must have a stand and walk option, as needed, and can occasionally kneel, crawl, crouch and stoop. AR 67. This person cannot walk on uneven ground or rough terrain. AR 67. The VE testified that this person could not perform his past relevant work and could not perform any work using Plaintiff's transferrable skills. AR 68.

Without consideration of transferability, this person could perform the positions of outside deliverer (2,500 in California, 25,300 nationally), semi-automatic sewing machine operator (800 in California, 6,900 nationally), and ticket seller (5,800 in California and 53,000 nationally).

For the second hypothetical, the ALJ asked the VE to assume the same vocational parameters as the first hypothetical. AR 69. This person could lift 10 pounds and carry zero pounds. AR 69-70. This person could sit for eight hours, stand two hours and walk one hour. AR 70. He could not climb, kneel or crawl and can occasionally reach, handle, feel, push and pull. AR 70. This person had to avoid exposure to unprotected heights and dangerous moving machines. AR 70. This person could not perform his past relevant work, but could be a surveillance systems monitor (500 in California and 5,400 nationally).

When questioned by Plaintiff's attorney, the VE explained that the ticket seller position was a sit/stand type of job. AR 71. If a person could not use foot controls more than occasionally, it would affect the jobs of sewing machine operator and outside deliverer. AR 71.

As to the ticket seller position, if there was need to elevate the leg for up to one third of the day, that position would be affected. AR 72.

Medical Record

On September 14, 1999, Plaintiff underwent arthroscopic surgery on his right knee after a diagnosis of degenerative internal derangement and a degenerative tear of the lateral meniscus. AR 144. In December 1999, Plaintiff indicated that he was improving but still experienced pain. AR 140.

On March 16, 2000, Plaintiff saw orthopedic surgeon Michael Oberto, M.D. After examination, he diagnosed "persistent right knee arthralgia, mild swelling, moderate stiffness, status post exacerbated by strain injury at work and unimproved following arthroscopic meniscectomy and debridement." AR 173. Plaintiff's left knee was pain free and stable. AR 173.

A March 16, 2000, x-ray of the right knee revealed moderate degenerative joint changes. AR 173.

In April 2000, Plaintiff had three injections in his right knee for treatment of right knee arthralgia secondary to osteoarthritis. AR 169, 170.

On June 1, 2000, Dr. Oberto completed a workers' compensation medical certification in which he diagnosed right knee degenerative joint disease. He indicated that Plaintiff was permanently disabled from his job as a machinist because it requires continuous standing and some squatting. He also recommended vocational rehabilitation and indicated that Plaintiff "should have a job where the requirements for standing and walking are intermittent throughout the day, but not continuous and he is not required to do any heavy lifting, squatting or kneeling." AR 159.

On July 10, 2000, State Agency physician Ronald M. Moore, M.D. completed a Physical Residual Functional Capacity Assessment form. He opined that Plaintiff could occasionally lift and carry 20 pounds, 10 pounds frequently, stand and/or walk about two to four hours in an eight hour workday, and sit about six hours. AR 180. He was precluded from frequent or sustained pushing or pulling with the lower extremities. AR 180. He could occasionally climb, kneel,

5

crouch and crawl, and could frequently stoop and balance. AR 181. He had to avoid concentrated exposure to hazards and could not walk on uneven terrain. AR 183. These findings were affirmed on September 21, 2000. AR 181.

On October 17, 2000, Plaintiff underwent a qualified medical examination by orthopedic surgeon Ian MacMorran, M.D. AR 190. Plaintiff complained of constant pain in his right knee and frequent pain in his left knee. AR 191. On examination, Plaintiff's gait was normal and his motor strength was 5/5. AR 194, 196. He diagnosed right knee sprain, chondromalacia right patellofemoral joint and left knee sprain. AR 196. He opined that Plaintiff was precluded from heavy lifting, prolonged weight bearing, climbing, walking over rough terrain, squatting, kneeling, crouching, crawling, and jobs requiring pivoting with either the right and/or left knee. AR 198.

On December 14, 2000, Alan Sanders, M.D. performed a workmen's compensation consultive orthopedic examination. AR 210. In a supplemental report dated February 9, 2001, Dr. Sanders diagnosed status post bilateral knee surgery with evidence of chondromalacia, more significant in the right knee. AR 214. As to both knees, Dr. Sanders opined that Plaintiff should be precluded from prolonged or repetitive kneeling and squatting, running and jumping, and vigorous twisting and turning. AR 215. Because of his left knee, he should be precluded from stair and ladder climbing. AR 215. Because of his right knee, he should be precluded from prolonged standing or walking, and working on uneven ground or rough terrain. AR 215.

On June 18, 2002, Plaintiff saw Dr. Oberto. He diagnosed right knee moderately advanced degenerative joint disease involving all three compartments and obesity. He indicated that therapy should include a weight loss program, with Plaintiff's ideal weight set at 250 pounds (he was estimated at 375 pounds), and, if he loses weight, he may be a candidate for total knee replacement. He opined that Plaintiff should be limited to sedentary to semi-sedentary work. If he loses weight and has a successful knee replacement, he may be able to perform light work activities permitting intermittent standing and walking. AR 248-250.

Plaintiff returned to Dr. Oberto on June 5, 2003.[4]  AR 256-257.  He diagnosed right knee moderately advanced degenerative joint disease involving all three compartments, mild left knee degenerative joint disease, and morbid obesity.  AR 257.  Dr. Oberto again discussed the importance of weight loss.  AR 257.  He opined that Plaintiff should be limited to sedentary and semi-sedentary work.  AR 257.  If Plaintiff loses weight and has a successful knee replacement, he may also perform light duty activities, permitting intermittent standing and walking.  AR 257.

On June 17, 2003, Dr. Oberto indicated that Plaintiff could lift 10 pounds occasionally and never carry any weight.  AR 252.  He could sit for eight hours without interruption, stand for two hours total and walk for one hour total.  AR 253.  The use of Plaintiff's hands and feet was not affected.  AR 253.  He could never climb, kneel or crawl and could occasionally balance, stoop and crouch.  AR 254.  According to Dr. Oberto, Plaintiff is not able to ambulate without a cane.  Dr. Oberto indicated that he last examined Plaintiff on June 5, 2003.  AR 255.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of degenerative joint disease on the right knee and left knee sprain.  Despite this, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to lift and carry 10 pounds frequently and 20 pounds occasionally, to stand and walk four hours in an eight hour workday and to sit six hours in an eight hour workday with the option to sit and stand as needed.  AR 20, 25.  Plaintiff could occasionally kneel, crawl, crouch, and stoop, but could not walk on uneven ground or over rough terrain.  AR 25.  The ALJ further found that Plaintiff's complaints were not as severe as alleged.  AR 24.  Relying on the VE testimony, the ALJ determined that Plaintiff could perform the jobs of outside deliverer, semi-automatic sewing machine operator, and ticket seller.  AR 26.  Even with the erosion of the occupational base for Plaintiff's sit/stand option, the ALJ found that these jobs exist in substantial numbers.  AR 26.

---

[4] The progress note for this visit was prepared by "Philip D. Morin, F.N.P. for Michael R. Oberto."  AR 257.

7

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[5] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (degenerative disease of the right knee and left knee sprain) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) can perform a significant number of jobs in the national economy. AR 27-28.

Plaintiff argues that (1) the ALJ did not fully and fairly review the substantial evidence of record; (2) the ALJ is biased; (3) the vocational record is incomplete and/or unsatisfactory; and (4) the ALJ failed to properly consider the testimony.[6]

## DISCUSSION

A.   Review of the Record

Plaintiff argues that the ALJ did not fully and fairly review the evidence because (1) the ALJ failed to consider Plaintiff's obesity; and (2) improperly rejected the opinions of Dr. Oberto, Dr. MacMorran and Dr. Sanders.

   1.   *Plaintiff's Obesity*

Plaintiff contends that the record reveals radiographic evidence of Plaintiff's back and knee problems, problems which are aggravated by Plaintiff's obesity. Plaintiff argues that the ALJ failed to review Plaintiff's obesity as required by SSR 02-1p.

Pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation process, including when determining an individual's RFC. "The combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p. The Ninth Circuit recently held that, pursuant to SSR 02-1p, the ALJ must consider obesity in

---

[5] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

[6] Reviewing Plaintiff's arguments was very difficult due to counsel's failure to properly summarize the record and her failure to set forth clear, articulate arguments. In future cases, counsel should consider if this format best serves her clients' interests.

determining RFC based on the information in the case record. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Here, the ALJ noted references to Plaintiff's weight in the medical records and Dr. Oberto's suggestions to lose weight. AR 20, 21, 22. He also noted that Plaintiff would be a candidate for a total knee replacement, but only if he achieved a weight of 250 pounds. AR 22, 23. The ALJ explained, "[i]t may be that much of the claimant's restrictions and symptoms are aggravated by excess weight." Despite this evidence, the ALJ did not find that Plaintiff's obesity, either alone or in combination with his other impairments, resulted in any functional limitations.

The ALJ's conclusion was correct based on the record, which does not contain evidence that Plaintiff's weight caused any limitations. *Burch,* 400 F.3d at 683 (finding that the ALJ's failure to consider obesity was proper where there was no evidence before the ALJ, and none in the record, which stated that claimant's obesity limited her functioning). However, it is not clear that any physicians, other than Dr. Oberto, took Plaintiff's weight into consideration. Dr. Moore, the State Agency physician upon whose opinion the ALJ relied, only reviewed records through June 2000. AR 187. These records included a notation that Plaintiff was an extremely large man and indicated that his weight on March 16, 2000 was 316 pounds. AR 187. At the time of the hearing and during Plaintiff's most recent medical examinations in June 2003, his weight had increased to 375 pounds. AR 256. Despite the lack of evidence, it is difficult to imagine that Plaintiff's weight did not cause additional limitations.

    2.   *Dr. Oberto's Opinion*

Plaintiff next argues that the ALJ improperly discredited the opinions of Dr. Oberto, Dr. MacMorran and Dr. Sanders, which Plaintiff contends "preclude[s] full time work and activities of a sedentary level." Opening Brief, at 3. A review of the ALJ's decision, however, indicates

that the ALJ gave "greater evidentiary weight" to the opinions of Dr. MacMorran and Dr. Sanders.[7]  This analysis will therefore focus on the ALJ's rejection of Dr. Oberto's opinions.

It is true that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985).  Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual.  However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Here, the ALJ rejected Dr. Oberto's June 2000 finding that Plaintiff was permanently disabled.  AR 24, 159-160.  He correctly explained that a treating source is not entitled to controlling weight on issues reserved for the Commissioner.  A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. 416.927(e).  "Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ." *Nyman v. Heckler*, 779 F.2d 528 (9th Cir. 1985).

However, the remaining reasons for rejecting Dr. Oberto's opinion are not sufficient.  The ALJ noted Dr. Oberto's June 2003 opinion that Plaintiff could lift up to 10 pounds but could not carry any weight and should be limited to sedentary and semi-sedentary work.  AR 24, 252-257.  He rejected this opinion because although Dr. Oberto states that he last examined Plaintiff on June 5, 2003, "there is some doubt that Dr. Oberto has actually treated the claimant since June 18, 2002, since F.N.P. Morin had written the medical progress note for June 5, 2003.  AR 24,

---

[7] The ALJ credits Dr. Sanders' February 2001 opinion that Plaintiff "is precluded from prolonged or repetitive kneeling and squatting, running and jumping with respect to the left knee.  He precluded prolonged standing or walking, kneeling and squatting, running, jumping, vigorous twisting and turning and working on uneven ground or terrain with regard to the right knee."  AR 24.  The ALJ also credits Dr. MacMorran's October 2000 opinion that Plaintiff is "precluded [from] heavy lifting and prolonged weightbearing, climbing, walking over rough terrain, squatting, kneeling, crouching and crawling."  AR 24.

251, 255.  While the ALJ may properly consider the nature of Plaintiff's treating relationship with Dr. Oberto, inferring that Dr. Oberto did not treat Plaintiff since 2002 is not proper.  20 C.F.R. § 416.927(d)(2).  Although the June 5, 2003 progress note may have been prepared by Mr. Morin, there is no indication that Dr. Oberto did not examine and treat Plaintiff on that date.  Indeed, Mr. Morin signs the progress note, "Philip D. Morin, F.N.P. for Michael R. Oberto, M.D."  AR 257.  Moreover, Dr. Oberto signed the June 17, 2003, assessment.  AR 255.

Finally, the ALJ rejected Dr. Oberto's June 2003 opinion because upon examination, both knees were stable.  AR 24, 256.  However, while both knees may have been stable, Plaintiff ambulated with a cane and had a mild stance limp on the right.  AR 256.  His deep knee squatting was very limited.  AR 256.  His right knee demonstrated moderately advanced osteoarthritis involving medial lateral compartments, significant joint space narrowing, with subchondral sclerosis and small joint margin osteophytes.  AR 256-257.  Based on this, he limited Plaintiff to sedentary to semi-sedentary work.  AR 257.  So, while both knees may have been stable, Dr. Oberto's treatment notes indicate that there were other symptoms and restrictions to support his opinion.

The ALJ therefore improperly disregarded Dr. Oberto's opinion that Plaintiff was limited to sedentary and semi-sedentary work.  As a treating doctor, his opinion was entitled to special weight, and the ALJ's reliance on an insignificant nuance and a single notation was not sufficient to reject Dr. Oberto's well-supported opinion.  Relief will be discussed at the end of this opinion.

B.      ALJ Bias

Next, Plaintiff makes widespread allegations that ALJ Berry is biased generally against all claimants and specifically against Plaintiff and his attorney.

When faced with a claim of bias, the Court must start with the presumption that administrative adjudicators are unbiased and that they exercise their decision-making authority with honesty and integrity.  *See Schneider v. McClure*, 456 U.S. 188, 195-196 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  This presumption can be rebutted by a showing of a conflict of interest or by showing some other specific reason for disqualification.  *Schneider*, 456 U.S. at 195.  The burden of overcoming this presumption rests with the Plaintiff.  *Id.* At 196.

1 Plaintiff supports his claim of general bias with ALJ Berry's statistics of approving
2 claims. According to Plaintiff, ALJ Berry approves only about 10% to 20% of all claims before
3 him, while the national average is about 63% and visiting judges at his office have approved
4 about 80%. Plaintiff also cites the "excellent favorable Social Security climate in the Central
5 Valley where there is typically low education, non-English speaking, and unskilled labor on the
6 whole." Opening Brief, at 4. These allegations, however, are nothing more than general claims
7 that have nothing to do with Plaintiff's specific proceeding.

8 In addition to the general claims of bias, Plaintiff contends that ALJ Berry is biased
9 specifically against him and his attorney, Jeffrey Milam. Plaintiff explains that counsel's office
10 has filed claims against ALJ Berry with the Office of General Counsel, and that ALJ rescinded an
11 "agreement" to recuse himself from cases involving Mr. Milam. Again, however, these are only
12 generalized claims that do not demonstrate actual prejudice, i.e., that the ALJ's behavior was so
13 "extreme as to display clear inability to render fair judgment." *Rollins v. Massanari*, 261 F.3d
14 853, 858 (9th Cir. 2001).

15 The only evidence cited by Plaintiff specifically referencing his proceeding is a reference
16 to AR 258-260 and 261-262. This evidence is nothing more than unsupported allegations by
17 Plaintiff and counsel, made in connection with Plaintiff's request for remand, of ALJ Berry's
18 bias. Plaintiff also states that "[t]he way in which the decision was written, and the vocational
19 expert examination, supports the allegation." Opening Brief, at 5. While ALJ Berry's ultimate
20 findings of Plaintiff's RFC were questionable, as explained below, this is not sufficient to
21 overcome the presumption that the ALJ was not biased.

22 C.  Vocational Record
23 Plaintiff argues that the vocational record is incomplete and/or unsatisfactory because the
24 ALJ's hypothetical was improper and he "manipulated the hypothetical to mandate a different
25 conclusion by the VE . . ."[8] Opening Brief, at 5-6.

---

[8] To the extent Plaintiff argues that this further supports his bias argument, it does not alter the Court's finding on the bias issue.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

Plaintiff argues that the ALJ's hypothetical was improper because Plaintiff's obesity was ignored, the stand/walk option was vague, and the RFC finding was not supported by the record. As for Plaintiff's obesity, the record did not disclose any resulting limitations and the ALJ was correct in finding that it was not an impairment, either alone or in combination with any other impairment.

Insofar as Plaintiff contends that the stand/walk option was vague, a review of the hearing transcript reveals otherwise. The ALJ asked the VE to assume an individual who could stand and/or walk for four hours, but needed the option to stand and walk as needed. AR 67. The VE replied that using transferrable skills, this person could not perform any jobs. AR 68. Although there was some confusion as to whether the ALJ gave a stand/walk option or sit/stand option, the ALJ clarified that the option was to stand and walk as needed, presumably from a sitting position. AR 69. The confusion was merely an issue of semantics. In any event, the VE testified that either way it is phrased, using Plaintiff's transferrable skills, there were no positions available. AR 69.

Finally, Plaintiff argues that the hypothetical was not consistent with the record because the ALJ provided "no rationale of substance to support his RFC/hypothetical." Opening Brief, at 5. As part of his RFC, the ALJ determined that Plaintiff could stand and walk for four hours in an eight hour workday. AR 28. Based on his RFC, the ALJ determined that Plaintiff could perform light work. AR 28. However, the ALJ's finding that Plaintiff could stand and walk for four hours is not supported by the record. The ALJ purported to rely on the State Agency physicians, but a review of their RFC reveals that Plaintiff could only stand and/or walk "2-4 hours" in an eight hour workday. AR 180. The ALJ also purports to rely on Dr. Sanders, but he

also indicated that Plaintiff should be precluded from prolonged standing or walking. AR 215. In the most recent medical evidence, Dr. Oberto opined that Plaintiff could walk for one hour and stand for two hours in an eight hour workday. AR 253. There is simply no evidence to support the ALJ's RFC finding that Plaintiff could stand and walk for four hours total.

D.   Subjective Complaints

Finally, in a somewhat unclear argument, Plaintiff contends that the ALJ failed to properly consider Plaintiff's testimony. Specifically, Plaintiff argues that the ALJ refused to acknowledge Plaintiff's "great earnings record," the evidence regarding pain, swelling and resulting restrictions, the treating physician's statements regarding laying down and elevation, and the evidence regarding the "aggressive treatments tried, including surgery, TENS unit, crutch, and injections." Opening Brief, at 6.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimaint's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In reviewing his testimony, the ALJ gave "credence to the claimant's subjective complaints that he is suffering from a degree of pain," but, using SSR 96-7p, determined that Plaintiff's subjective complaints were not totally credible and were only partially supported by the substantial medical evidence. AR 22-24. In so finding, the ALJ first reviewed Plaintiff's testimony and his statements in his Reconsideration Disability Report, where Plaintiff reported that he could take care of his personal needs but had difficulty with the ones that required bending or twisting, occasionally used an assistive device to walk, could lift and carry 20 to 30 pounds, and drove, fixed breakfast, attended college classes three days per week and did his homework. AR 22. The ALJ properly determined that these activities were compatible with standing, walking and sitting throughout the day without the required use of an assistive device.[9] AR 24. *Fair v. Bowen*, 885 F.2d at 597 ("If, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.").

The ALJ also explained that Plaintiff's failure to lose weight, despite being told of the importance of doing so, detracted from his credibility. AR 23. Indeed, the evidence before the ALJ demonstrated that Plaintiff was advised to lose weight yet failed to do so. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence).

Next, the ALJ noted that Plaintiff was not taking the type or amount of medication associated with chronic pain syndrome. AR 23. Plaintiff testified that he takes only three to four over-the-counter Ibuprofen daily. AR 52. The ALJ also properly noted that Plaintiff reported improvement with the use of a TENS unit and after a series of injections. AR 23. Conservative, effective treatment is a basis for discrediting a claimant's complaints. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

---

[9] Even though Dr. Oberto indicated that Plaintiff could not ambulate without a cane in June 2003, the ALJ properly questioned this report, as explained above. AR 24.

1 The ALJ further explained that there was no evidence of ongoing treatment since June 2000, which indicates that for the past three years, his condition was not acute and did not require prompt care for a constant, debilitating pain syndrome. AR 23. The ALJ also noted the existence of a large gap in treatment from October/December 2000 to June 2002, and again from June 2002 to June 2003, when Plaintiff was seen by Mr. Morin. AR 23. Similarly, the ALJ found no evidence of instability of Plaintiff's knees, no evidence of balance problems or reports of falling, and no reports of hospitalization. AR 23-24. Although the ALJ may not discredit the allegations of the severity of the pain *solely* because the evidence does not support Plaintiff's statements, he may consider this in combination with other factors. *Lester*, 81 F.3d at 834 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)(*en banc*)).

Finally, the ALJ noted that Plaintiff did not appear to be in any distress during the hearing and was able to testify without any noticeable problems with memory or thought content. AR 24. The ALJ properly emphasized that his credibility determination was not based solely on this factor, but was one factor that he considered. AR 24. *See eg. Quang Van Han v. Bowen*, 882 F.2d 1453, 1458, n. 8 (9th Cir. 1989).

The ALJ gave specific and proper findings to permit this Court to conclude that he did not arbitrarily discredit Plaintiff's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

E.   Relief

The Court has concluded that the ALJ improperly rejected Dr. Oberto's opinion and improperly determined that Plaintiff could stand and walk for four hours.

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a

rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."). The Court will discuss the remedy at the end of this opinion.

Here, no useful purpose would be served by further administrative proceedings. The evidence demonstrates that Plaintiff could walk for less than four hours during an eight hour day. Although the State Agency physician gives a range of two to four hours, four hours is his maximum ability and the other evidence of record supports a finding that four hours is not a realistic determination. Moreover, Dr. Oberto opined that Plaintiff should be limited to sedentary and semi-sedentary work.

The VE testified that transferrable jobs would require Plaintiff to be on his feet *more* than four hours per day, ruling out any jobs using Plaintiff's transferrable skills. AR 69. Without considering Plaintiff's transferrable skills, the VE testified that Plaintiff could perform the jobs of outside deliverer, semi-automatic sewing machine operator, and ticket seller. AR 69. However, all of these positions are light duty positions, which requires "a good deal of walking or standing." 20 C.F.R. § 404.1567. Plaintiff's limitation in standing/walking renders him incapable of performing light work.

When the ALJ asked the VE to assume a person who could lift 10 pounds and carry zero pounds, sit for eight hours, stand two hours and walk one hour, who could not climb, kneel or crawl but could occasionally reach, handle, feel, push and pull, and who had to avoid exposure to unprotected heights and dangerous moving machines, the VE determined that this person could perform the sedentary position of surveillance systems monitor (500 in California and 5,400 nationally). Even though the Ninth Circuit has never found a minimum number of jobs necessary to constitute a significant number within the meaning of the Act, 500 positions does not meet the requirement. *Barker v. Secretary of Health & Human Servs.*, 882 F.2d 1474, 1478 (9th Cir. 1989) (finding that 1266 jobs in the Los Angeles/Orange County are were considered

significant); *see also Moncada v. Chater,* 60 F.3d 521, 524 (9th Cir. 1995); *Martinez v. Heckler,* 807 F.2d 771, 775 (9th Cir. 1986).

Therefore, pursuant to the VE testimony, Plaintiff should have been found disabled.  No additional evidence is necessary and therefore further proceedings would serve no purpose.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED for payment of benefits to Plaintiff.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Andrew Stansbury and against Defendant Jo Anne B. Barnhart, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    August 22, 2005                     /s/ Dennis L. Beck
3b142a                                        UNITED STATES MAGISTRATE JUDGE